# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| MUKESHKUMAR B. PATEL, | |
|     Plaintiff, | NO. 3:17-CV-02243 |
|     v. | (JUDGE CAPUTO) |
| VITHALBHAI D. DHADUK, a/k/a VITHAL D. DHADUK, | |
|     Defendant. | |

## MEMORANDUM

Presently before me is a Motion to Dismiss Defendant's Counterclaims filed by Plaintiff, Mukeshkumar B. Patel. (*See* Doc. 29). Patel filed suit against Defendant, Vithal D. Dhaduk to recover damages for an alleged breach of contract regarding the parties' "Memorandum of Understanding." (*See* Doc. 29). Patel asserts that Dhaduk failed to pay him $9.45 million in exchange for Patel's exit from Somahlution ("Soma") and Global Pharma Analytics, LLC ("GPA") as soon as possible. (*See* Doc. 7). Dhaduk answered the complaint and filed five counterclaims against Patel: Fraud (Counterclaim I), Misrepresentation (Fraudulent Inducement) (Counterclaim II), Breach of Contract (Counterclaim III), Promissory Estoppel (Counterclaim IV), and Tortious Interference (Counterclaim V). (*See* Doc. 27). Because Dhaduk has not adequately plead counterclaims I, II, III and IV, Patel's motion to dismiss counterclaims I, II, III, and IV will be granted; however, counterclaim V will be dismissed without prejudice and Dhaduk will be given leave to amend.

## I. Background

The facts from Dhaduk's Amended Answer with Affirmative Defenses and Counterclaims (Doc. 27), taken as true and viewed in the light most favorable to Dhaduk, are as follows:

Dhaduk and Patel are part owners of a professional cricket team, the Kochi Tuskers

Kerala ("Kochi"), which was a franchise in the Indian Professional League ("IPL"). (Doc. 27 at ¶ 2). In September 2011, the Board of Control for Cricket in India ("BCCI") announced its decision to terminate the Kochi franchise, because Kochi allegedly breached its league agreement. (*Id.* at ¶ 4). Subsequently, litigation ensued regarding the BCCI's decision. (*Id.* at ¶ 6).

In July 2015, an arbitration panel ruled in favor of Kochi and entered an arbitration award ("Arbitration Award") of "at least $77 million before continuing interest and penalties." (*Id.* at ¶ 6). When the Arbitration Award was announced, Patel told Dhaduk that they would receive approximately twenty-six percent (26.00%) of the arbitration award in proportion with their collective ownership interests in Kochi. (*Id.* at ¶ 7). Patel's representation lead Dhaduk to believe that Patel and Dhaduk would each receive thirteen percent (13.00%) of the total award, which amounted to "approximately $10 million." (*Id.* at ¶ 8). Patel "was obligated to and agreed to" secure their interests in the Arbitration Award. He promised Dhaduk "that he had the ability to do, and would do, everything possible to force" a prompt payment. (*Id.* at ¶¶ 9-11).

Notwithstanding Patel's "promises and representations" and unbeknownst to Dhaduk, the BCCI was not committed to paying the Arbitration Award immediately and appealed to the Bombay High Court. (*Id.* at ¶ 13). At this time, Patel "did nothing" to force the BCCI to pay the Arbitration Award as he had promised Dhaduk. (*Id.* at ¶ 15).

These promises of an "impending $10+ million payout" from the Arbitration Award were made when Patel started to solidify a "running ledger" of the parties' "various business dealings." (*Id.* at ¶ 19). On July 16, 2015, Patel and Dhaduk entered into a written agreement, the "Memorandum of Understanding" ("MOU"), memorializing such business dealings. (*See* Doc. 7-1). Dhaduk explains that Patel's promise he was to receive at least $10 million from the Arbitration Award induced him to sign the MOU. (*Id.* at ¶ 20). The MOU discusses the Arbitration Award by specifically identifying the "IPL money" and "corroborates" that Patel promised that the parties' portion of the Arbitration Award would be "split 50/50." (*Id.* at ¶ 17). Dhaduk maintains that the MOU is not a "binding contract" but

2

rather a "running ledger for the various business dealings loosely involving [Patel and Dhaduk]." (*Id.* at ¶¶ 18-19).

On December 6, 2017, Patel initiated this action, attaching the MOU. (Doc. 1). On January 1, 2018, Patel filed an amended complaint, alleging that the MOU is "valid and enforceable." (Doc. 7 at ¶ 19). The third paragraph of the MOU states, "[Dhaduk] will pay [Patel] USD 9.45 Million as soon as he can for exiting Soma/GPA." (*Id.* at ¶ 3). Patel argues that Dhaduk breached the agreement when he failed to pay Patel $9.45 million "as soon as he [could]" for exiting Soma and GPA. (Doc. 7 at ¶ 20). Patel contends that he had exited Soma and GPA as of July 16, 2015. (*Id.* at ¶ 21). He further argues that Dhaduk has had the ability to pay him since July 16, 2015 as Patel certified to the U.S. Government, under penalty of perjury, within the last five years, that he has assets worth over $30 million, he derives an annual income of $2.5 million per year, and he owns stocks and bonds that have a market value of $22 million. (*Id.* at ¶¶ 13-14, 23).

Under the MOU, Dhaduk claims that he was "due to get at least $10 million from the Arbitration Award" and "did not have to give any of it - let alone $9.45 million - to Mr. Patel on account of 'exiting Soma/GPA.'" (Doc. 27 at ¶ 20). Dhaduk further explains that days before the parties signed the agreement they discussed over the phone that Patel's compensation for exiting Soma and GPA was limited to the success of those companies and not Dhaduk individually. (*Id.* at ¶¶ 21-22).

When Patel filed this action, it became clear to Dhaduk that Patel "fraudulently induced" him to sign the MOU so that he could claim the MOU was a binding contract. (*Id.* at ¶ 28). Since the signing of the MOU, Patel has also derogated his duties of "good faith and fair dealing" by failing to enforce the Arbitration Award. (*Id.* at ¶ 23).

In a separate matter, Dhaduk states that Patel convinced him to loan $1.1 million to NKD Maritime Limited, one of Patel's companies. (*Id.* at ¶ 30). In November 2017, Dhaduk inquired about NKD Maritime Limited's ability to pay this loan obligation. (*Id.* at ¶ 31). Patel, however, had informed the company that the MOU accounted for the $1.1 million loan and thus rendered the loan "null and void." (*Id.* at ¶ 32). Accordingly, NKD Maritime Limited

refused to repay Dhaduk. (*Id.* at ¶ 34).

On June 9, 2019, Dhaduk filed an Amended Answer with Affirmative Defenses and Counterclaims. (*See* Doc. 27). Dhaduk alleges five counterclaims against Patel: Fraud (Counterclaim I), Misrepresentation (Fraudulent Inducement) (Counterclaim II), Breach of Contract (Counterclaim III), Promissory Estoppel (Counterclaim IV), and Tortious Interference (Count V). (*See id.*).

This Motion has been fully briefed and is ripe for review.

## II. Legal Standard

Federal Rule of Civil Procedure 12(b)(6) provides for the dismissal of a complaint, in whole or in part, for failure to state a claim upon which relief can be granted. *See* Fed. R. Civ. P. 12(b)(6). "A pleading that states a claim for relief must contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a). The statement required by Rule 8(a)(2) must give the defendant fair notice of the grounds for the claim. *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (*per curiam*). While detailed factual allegations are not required, conclusory statements that allege the complainant is entitled to relief are inadequate. *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009). Legal conclusions that provide the framework for a complaint must be supported by factual allegations. *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).

When considering a Rule 12(b)(6) motion, a court is limited to determining if a plaintiff is entitled to offer evidence in support of his or her claims. *See Semerenko v. Cendant Corp.*, 223 F.3d 165, 173 (3d Cir. 2000). A court does not consider whether a plaintiff will ultimately prevail. *Id*. The inquiry at the motion to dismiss stage is "normally broken into three parts: (1) identifying the elements of the claim, (2) reviewing the complaint to strike conclusory allegations, and then (3) looking at the well-pleaded components of the complaint and evaluating whether all of the elements identified in part one of the inquiry are sufficiently alleged." *Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011). If there are well-pleaded factual allegations, then a court must assume their truthfulness in deciding whether they raise an entitlement to relief. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 679 (2007).

Dismissal is only appropriate when, accepting as true all the facts alleged in the complaint, Plaintiff has not plead enough factual allegations to provide a reasonable expectation that discovery will lead to evidence of each necessary element. *Phillips v. County of Allegheny*, 515 F.3d 224, 234 (3d Cir. 2008).

In deciding a Rule 12(b)(6) motion, a court considers the allegations in the complaint and exhibits attached to the complaint. *Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010). In addition to the complaint and any exhibits attached, a court may examine "legal arguments presented in memorandums or briefs and arguments of counsel." *Pryor v. NCAA*, 288 F.3d 548, 560 (3d Cir. 2002) (quotation omitted). A court may also consider a "document integral or explicitly relied upon in the complaint." *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997). At bottom, documents may be examined by a court when ruling on a motion to dismiss when the plaintiff had proper notice of the existence of the documents. *Id.* A court need not assume the plaintiff can prove facts that were not alleged in the complaint, *see City of Pittsburgh v. W. Penn Power Co.*, 147 F.3d 256, 263 & n.13 (3d Cir. 1998), or credit a complaint's "'bald assertions'" or "'legal conclusions.'" *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 (3d Cir. 1997) (quoting *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1429–30 (3d Cir. 1997)).

## III. Discussion

Along with their briefs, Patel filed a copy of the MOU. (*See* Doc. 7-1). As a court deciding a motion to dismiss may consider undisputably authentic documents the parties submit, the MOU that Patel submitted and is referenced by Dhaduk in his counterclaims, will form part of the record for resolution of the motion to dismiss. Dhaduk alleges five counterclaims against Patel: Fraud (Counterclaim I), Misrepresentation (Fraudulent Inducement) (Counterclaim II), Breach of Contract (Counterclaim III), Promissory Estoppel (Counterclaim IV), and Tortious Interference (Counterclaim V). (*See* Doc. 27). Patel moves to dismiss all of Dhaduk's counterclaims, because each one allegedly fails to state a claim upon which relief could be granted. (*See* Doc. 29).

A. Counterclaims I and II - Fraud and Misrepresentation (Fraudulent Inducement)

In counterclaim I, Dhaduk asserts a fraud claim against Patel. (*See* Doc. 27 at 23). His allegations can be summarized as follows: (1) the MOU was not meant to be an enforceable contract but rather a "running ledger" for the parties' various business dealings, (2) Patel does not have the right to collect $9.45 million from Dhaduk individually for exiting Soma and GPA and may only receive compensation for exiting Soma and GPA to the extent of the companies' success, and (3) Patel used the false promises of an "impending $10+ million payout" to induce Dhaduk to sign the MOU. (*Id.* ¶¶ 38-42). In counterclaim II, Dhaduk asserts a fraudulent inducement claim. (*Id.* at 25). Here, he makes a number of similar arguments regarding Patel's false promises that he had the ability to secure a prompt payment of the Arbitration Award, which induced Dhaduk to sign the MOU. (*Id.* at ¶¶ 44-52). I will address Dhaduk's claim that Patel's false representations about forcing a payment of the Arbitration Award induced him to sign the MOU, which appear in both counterclaims I and II, in my discussion of counterclaim II.

Patel argues that counterclaims I and II are barred for two reasons. (See Doc. 29-3 at 7). First, the parol evidence rule prevents a court from reviewing representations made by the parties prior to the execution of a fully integrated contract. (*Id.*). Second, the fraud claims are time barred by a two-year statute of limitations which began to accrue when the injury occurred. (*Id.* at 7-8). According to Patel, Dhaduk's injury occurred in July 2015 as he was expecting prompt payment of his proceeds from the Arbitration Award at this time, but did not receive such a payment. (*Id.* at 8-9).

Neither party has raised the issue of conflict of laws in its briefing on assumption, so I apply Pennsylvania law. *Montgomery Ward & Co. v. Pac. Indem. Co.*, 557 F.2d 51, 58 n.11 (3d Cir. 1977). To the extent that Dhaduk's fraud claims are time-barred, a court must assume the truthfulness of all well-pleaded factual allegations in deciding whether they raise an entitlement to relief for the purposes of a 12(b)(6) motion. *Twombly*, 550 U.S. at 679. Under Pennsylvania law, fraud claims are subject to a two-year statute of limitations period.

*Ash v. Cont' Ins. Co.*, 932 A.2d 877, 879 (Pa. 2007). This time period begins to run when the injury occurs. *Danysh v. Eli Lilly & Co.*, 461 F. App'x 75, 77 (3d Cir. 2012). The "discovery rule" can be used to toll the statute of limitations. *Id.* Under the discovery rule, the statute of limitations for fraud claims begins to run when the injured party discovers or reasonably should have discovered that he has been injured. *Id.*

Dhaduk argues that he did not discover his injury until Patel filed the instant action in December 2017. (Doc. 34 at 12). Taking this account to be true for the purposes of a 12(b)(6) motion, Dhaduk's counterclaims for fraud and fraudulent inducement are within the two-year statute of limitations period as Dhaduk filed his counterclaims in June of 2019. (*See* Doc. 27).

On the other hand, Dhaduk's various allegations in counterclaim I about the enforceability of the MOU and his obligations under the agreement are barred by the parol evidence rule. When a written agreement represents the parties' entire contract, the parol evidence rule dictates that the writing is considered to be the best and only evidence of the parties' agreement. *Yocca v. Pittsburgh Steelers Sports, Inc.*, 854 A.2d 425, 436 (2004). A writing is presumed to be the parties entire contract when it appears to be "a contract complete within itself" and conveys "a complete legal obligation without any uncertainty as to the object or extent of the parties' engagement." *Id.* at 435 (quotation omitted). The presence of an integration clause that states the writing is meant to express the parties' entire agreement is a clear indication that the writing contemplates all of the parties' negotiations and conversations made before its execution. *Id.* Thus, prior representations regarding the same subject matter as the contract are rarely admissible to vary or explain the terms of the agreement. *Rahemtulla v. Hassam*, 539 F. Supp. 2d 755, 773 (M.D. Pa. 2008) (citing *Hart v. Arnold*, 884 A.2d 316, 341 (2005)). In determining whether the same subject matter requirement is met, the written contract does not need to directly contradict the prior representations as long as the contract relates to the same subject addressed by the alleged prior representations. *Palermo Gelato, LLC v. Pino Gelato, Inc.*, No. 2:12-CV-00931, 2013 WL 3147312, at *5 (W.D. Pa. June 19, 2013). Furthermore, while a

7

court may consider extrinsic evidence to resolve contractual ambiguities, an opposing party may not offer extrinsic evidence to create an ambiguity that does not exist within the language of the contract. *See Int'l Union, United Auto., Aerospace & Agr. Implement Workers of Am., U.A.W. v. Skinner Engine Co.*, 188 F.3d 130, 145 (3d Cir. 1999).

In this case, the MOU represents a fully integrated and enforceable contract with respect to Patel and Dhaduk's business dealings. The contract contains a final provision that provides: "The above six points will conclude the entire business venture and we would conclude our business relationship. All account [sic] will be settled and all joint business between Mukesh Patel and Dr. Dhaduk. We will have no other financial or managerial liability except the commitment in this agreement." (Doc. 7-1). This provision, namely, the lack of financial or managerial liability except as set forth in the MOU, is indicative that the MOU is enforceable and fully integrated as to those issues. Along that vein, the MOU also relates to the same subject matter that Patel is alleged to have fraudulently misrepresented prior to the execution of the agreement, *i.e.* Patel's compensation for leaving Soma and GPA. Specifically, the MOU provides, "Dr. Dhaduk will pay Mukesh bhai USD 9.45 Million as soon as he can for exiting Soma/GPA." (*Id.* at ¶ 3). As such, the parol evidence rule bars the consideration of extrinsic evidence that Patel did not have the right to collect compensation from Dhaduk individually for exiting Soma and GPA. Moreover, Dhaduk has not alleged any facts in counterclaim I that point to ambiguities within the language of the MOU, rather Dhaduk points to an external disagreement between the parties as to whether the MOU was meant to be a binding contract versus a "running ledger" of their various business dealings. (*See id.* at ¶¶ 39, 41-42). Thus, I will dismiss counterclaim I with prejudice, because Dhaduk has failed to properly plead a fraud claim.

In counterclaim II, Dhaduk's assertion that Patel fraudulently induced him to agree to the MOU by promising to force payment of the Arbitration Award is also barred by the parol evidence rule. Parol evidence cannot be admitted based on a claim that an opposing party made false promises that induced the complaining party to assent to the contract. *ClinMicro Immunology Ctr., LLC v. PrimeMed, P.C.*, No. CIV.A. 3:11-02213, 2012 WL

3011698, at *6 (M.D. Pa. July 23, 2012). In Pennsylvania, the parol evidence rule typically bars fraudulent inducement claims if the contract at issue is fully integrated. *First United. Bank & Trust v. PNC Fin. Servs. Grp., Inc.*, 667 F. Supp. 2d 443, 451 (M.D. Pa. 2009). Moreover, "integration clauses and contract terms that specifically cover the subject matter of the alleged fraudulent inducement frequently result in dismissal of fraudulent inducement claims in the Third Circuit." *Interwave Tech., Inc. v. Rockwell Automation, Inc.*, No. 05–398, 2005 WL 3605272, at *18 (E.D. Pa. Dec. 30, 2005). Parol evidence may be considered only if an opposing party alleges that the representations were fraudulently or accidentally omitted from the integrated contract. *First United Bank & Trust*, 667 F. Supp. 2d at 452 (citing *Dayhoff Inc. v. H.J. Heinz Co.*, 86 F.3d 1287, 1300 (3d Cir. 1996).

Here, as discussed previously in this section, Dhaduk and Patel entered into a fully integrated and enforceable contract. Indeed, the MOU specifically references a "50/50 split" of the "IPL money," which relates to the same subject matter as the fraudulent inducement Dhaduk alleges. (Doc. 7-1 at ¶ 5). Since Dhaduk has not alleged any facts in counterclaim II that Patel's representations regarding his promise to force a prompt payment of the Arbitration Award were fraudulently omitted from the MOU by accident or mistake, I am barred by the parol evidence rule from considering such extrinsic evidence. Thus, I will dismiss counterclaim II with prejudice, because Dhaduk has failed to properly plead a fraudulent inducement claim.

B.     Counterclaim III - Breach of Contract

In counterclaim III, Dhaduk asserts a breach of contract claim. (Doc. 27 at 27). Dhaduk states that under the MOU, Patel was "required to and promised to do everything possible" to force a prompt payment of the Arbitration Award and to split it "50-50" with Dhaduk. (*Id.* at ¶ 56). Patel, however, violated these obligations and derogated from his duties of good faith and fair dealing by "[sitting] on his hands and doing nothing to force the BCCI to pay the Arbitration Award." (*Id.* at ¶ 59). Patel argues that counterclaim III must be dismissed, because Dhaduk has not pled a breach of contract claim that is independent of his claim for breach of the implied warranty of good faith and fair dealing. (Doc. 29-3 at 9).

He also asserts that a plain reading of the agreement shows that "there was no express obligation that required Patel to force a third-party to pay the Arbitration Award 'shortly.'" (*Id.* at 10).Thus, Patel did not breach the MOU by failing to force such a payment from the BCCI. (*Id.*)

Here, Dhaduk has failed to properly plead a breach of contract claim, because he has not established that Patel breached any express or implied obligations under the MOU. In Pennsylvania, three elements are required to properly plead a breach of contract claim: (1) the existence of a contract and its essential terms, (2) a breach of an obligation provided by the contract, and (3) resultant damages. *ClinMicro Immunology Ctr., LLC*, 2012 WL 3011698, at *5 (citing *Williams v. Nationwide Mut. Ins. Co.*, 750 A.2d 881, 884 (Pa. Super. Ct. 2000)). Pennsylvania law does not recognize an independent cause of action for breach of the covenant of good faith and fair dealing, because this claim merges with the breach of contract claim. *Zaloga v. Provident Life & Acc. Ins. Co. of Am.*, 671 F. Supp. 2d 623, 631 (M.D. Pa. 2009).

Though Dhaduk alleged that the MOU is not an enforceable contract in counterclaims I and II, for the purposes of this claim Dhaduk asserts that the MOU is an enforceable contract. Taking this averment to be true pursuant to Rule 12(b)(6), Dhaduk has satisfied the first element for a breach of contract claim. Dhaduk, however, has failed to demonstrate that Patel violated a duty provided by the MOU. A plain reading of the MOU does not demonstrate that Patel was expressly or impliedly obligated to force a prompt payment of the Arbitration Award from the BCCI. (*See* Doc. 7-1). The only provision that references something analogous to payment of the Arbitration Award provides: "50-50 split of Uganda/IPL /Jablali" and "if IPL money comes before Dubai project completion then it will be adjust [sic] with the USD 7.96 million." (*Id.* at ¶ 5). Neither of these references contemplates a strict obligation for Patel to force a prompt payment of the Arbitration Award. Without a valid breach of contract claim, Dhaduk's allegations of breach of the covenant of good faith and fair dealing also fail. Therefore, I will dismiss counterclaim III with prejudice, because Dhaduk has failed to properly plead a breach of contract claim.

### C. Counterclaim IV - Promissory Estoppel

In counterclaim IV, Dhaduk makes a variety of allegations in support of his promissory estoppel claim, which amount to an assertion that Patel should be bound to the promises that he made before the execution of the MOU, including forcing a payment of the Arbitration Award and providing Dhaduk with his portion of the Award amounting to $10+ million. (Doc. 27 at ¶¶ 66-71). Patel argues that counterclaim IV must be dismissed, because the MOU is an enforceable contract, which makes promissory estoppel inappropriate. (Doc. 29-3 at 11). He further contends that the claim should be dismissed, because the obligations that Patel allegedly breached were contemplated prior to the execution of the MOU. (*Id.* at 12).

In the instant action, a promissory estoppel claim is inappropriate in the face of the MOU, which is a binding contract between Dhaduk and Patel. In Pennsylvania, a promissory estoppel claim is only valid when an enforceable contract does not exist. *Gillespie v. Dring*, No. 3:15-CV-0950, 2015 WL 5895513, at *6 (M.D. Pa. Oct. 6, 2015), on reconsideration in part, No. 3:15-CV-0950, 2016 WL 213620 (M.D. Pa. Jan. 19, 2016). Although promissory estoppel is inapplicable when a contract exists, it may be pled in the alternative to a breach of contract claim. *Kump v. State Farm Fire & Casualty Co.*, No. 3:12–CV–72, 2012 WL 1123897, at *3 (M.D. Pa. Apr. 4, 2012). On the other hand, when a promissory estoppel claim is pled in the alternative to a breach of contract claim, a court may still dismiss the claim if a valid contract existed between the parties. *Tucci v. CP Kelco ApS*, No. 02–1765, 2002 WL 31261054, at *6 & *6 n.1 (E.D. Pa. Oct. 10, 2002). Promissory estoppel is also inappropriate when the claim is based on statements that were made before the execution of the existing agreement and reference subject matter that is within the purview of the existing agreement. *W. Chester Univ. Found. v. MetLife Ins. Co. of Connecticut*, 259 F. Supp. 3d 211, 223 (E.D. Pa. 2017).

As discussed in Section A, Patel and Dhaduk entered into an enforceable and fully integrated written agreement, the MOU, rendering promissory estoppel inappropriate. To the extent that Dhaduk premises his promissory estoppel claim on the statements that Patel

11

made prior to the execution of the MOU regarding promises to force a prompt payment of the Arbitration Award, such representations make promissory estoppel inapplicable for two reasons. First, these promises were made before the parties executed the MOU as they were "material inducements" for Dhaduk to sign the MOU. (Doc. 27 at ¶ 67). Second, these promises touch on subject matter that comes within the purview of the MOU, as the MOU specifically references a "50-50 split" of the "IPL money." (Doc. 7-1 at ¶ 5). Accordingly, I will dismiss counterclaim III with prejudice, because Dhaduk has failed to properly plead a promissory estoppel claim.

### D. Counterclaim V - Tortious Interference

In counterclaim V, Dhaduk puts forth a tortious interference claim. (See Doc. 27 at 32). Dhaduk claims that he loaned one of Patel's companies, NKD Maritime Limited, $1.1 million to be paid back in one year. (*Id.* at ¶ 74). When the loan had not been repaid years later, Dhaduk inquired about repayment but Patel asserted that the obligation had been accounted for by the MOU and was thus "null and void." (*Id.* at ¶¶ 75-76). At Patel's direction, NKD Maritime Limited has refused to repay the loan. (*Id.* at ¶ 78). In response, Patel argues that Dhaduk's claim must not prevail, because Dhaduk has failed to identify an existing contract that gives rise to this claim, Patel cannot tortiously interfere with the contracts of a company that he owns, and lack of personal jurisdiction. (*See* Doc. 29-3 at 12-15).

Dhaduk has failed to state a claim for tortious interference upon which relief can be granted, because he has not demonstrated that Patel frustrated Dhadhuk's contract with a third party. Under Pennsylvania law, four elements are required to properly establish a tortious interference claim:

> (1) that there be an existing contractual relationship between the plaintiff and a third party; (2) that the defendant purposely or intentionally interfered with the performance of that contract by inducing a breach or otherwise causing the third party not to perform; (3) that the defendant was not privileged to act in this manner; and (4) that the plaintiff suffered pecuniary loss as a result of the breach of contract.

*ClinMicro Immunology Ctr., LLC*, 2012 WL 6537994, at *5 (quotation omitted). In determining the existence of a third party, the opposing party may not be a party to the

12

contract with which he allegedly interfered. *Martin v. Finley*, 349 F. Supp. 3d 391, 410 (M.D. Pa. 2018), on reconsideration, No. 3:15-CV-1620, 2019 WL 1473421 (M.D. Pa. Apr. 3, 2019). As such, a principal's agent cannot be held liable for tortiously interfering with the principal's contract. *Id.* (citing *CGB Occupational Therapy, Inc. v. RHA Health Servs. Inc.*, 357 F.3d 375, 385 (3d Cir. 2004)). Corporate officers, as agents of the corporation, are "typically immune from a tortious interference claim brought by a [party] who has a contract with the corporation that was allegedly interfered with by the corporate officer." *Martin*, 349 F. Supp. 3d at 411. But where a corporate officer acts outside the scope of employment, he can be held liable for tortious interference. *Id.* A corporate officer acts outside the scope of his employment "when the 'sole motive in causing the corporation to breach the contract is actual malice toward the plaintiff, or if the officer's conduct is against the corporation's interest.'" *Tisone v. Berardino*, No. CV 16-167, 2016 WL 7404556, at *8 (W.D. Pa. Dec. 22, 2016) (quotation omitted).

While Dhaduk has sufficiently alleged the existence of a contract between himself and NKD Maritime Limited for the purposes of a 12(b)(6) motion, he has failed to satisfy the second element necessary to properly plead tortious interference. In counterclaim V, Dhaduk states that Patel "successfully solicited Dr. Dhaduk" to loan NKD Maritime Limited $1.1 million. (Doc. 27 at ¶ 78). He further explains that NKD Maritime Limited is "one of Mr. Patel's affiliated companies." *Id.* As an agent of NKD Maritime Limited, Patel cannot be held liable for tortiously interfering with the company's contract with Dhaduk.

Considering the sufficiency of Dhaduk's factual allegations in counterclaim V, I will dismiss counterclaim V without prejudice and give leave to amend. Pursuant to Rule 12(b)(6), a court may only consider the allegations in the complaint and exhibits attached to the complaint. *Mayer*, 605 F.3d at 230. In Dhaduk's Brief in Opposition, he further argues that he did not specify Patel's role within NKD Maritime Limited. (Doc. 34 at 16). He also contends for the first time that Patel "was acting outside the scope of his duties and without authority, by using a personal ledger that makes no mention of the loan, to direct the company not to repay Defendant." (Doc. 34 at 17). Dhaduk, however, has not alleged any

13

facts in counterclaim V that would suggest Patel directed NKD Maritime Limited not to repay Dhaduk's loan solely out of actual malice for Dhaduk or against the NKD Maritime Limited's interests.[1] Thus, I will dismiss counterclaim V without prejudice and give leave to amend.

## IV. Conclusion

For the above stated reasons, Plaintiff's Motion to Dismiss Defendant's Counterclaims I, II, III, and IV will be granted. Counterclaim V will be dismissed without prejudice and Dhaduk will be given leave to amend.

An appropriate order follows.

Date: September 5, 2019        /s/ A. Richard Caputo
                                                        A. Richard Caputo
                                                        United States District Judge

---

[1] This is not to say that the inclusion of such facts will necessarily lead to a viable cause of action.