# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| MUKESHKUMAR B. PATEL, | |
| Plaintiff, | NO. 3:17-cv-02243 |
| v. | (JUDGE CAPUTO) |
| VITHALBHAI D. DHADUK, a/k/a VITHAL D. DHADUK, | |
| Defendant. | |

## MEMORANDUM

Presently before me is the Motion for Summary Judgment (Doc. 39) filed by Plaintff, Mukeshkumar B. Patel. Patel filed suit against the Defendant, Vithal D. Dhaduk to recover damages for an alleged breach of contract regarding the parties' Memorandum of Understanding. (*See* Doc. 1). Patel asserts that the Memorandum of Understanding is a binding contract, and Dhaduk breached it by failing to pay him $9.45 million as soon as he was able in exchange for Patel's exit from Somahlution ("Soma") and Global Pharma Analytics, LLC ("GPA"). In response, Dhadhuk argues that the Memorandum of Understanding was intended to be an outline of the parties' various business dealings not a legally binding document. Accordingly, he is not in breach of the agreement. Because Patel has established as a matter of law that: (1) the MOU is an enforceable contract, (2) Dhaduk breached the MOU by failing to pay him $9.45 million for exiting Soma and GPA, and (3) Patel has suffered damages as a result of Dhaduk's breach, his motion for summary judgment will be granted.

## I. Background

Patel and Dhaduk started off as friends and business partners. (Doc. 40-1, Doc. 48-2, Transcript of Dhaduk's 8/9/19 deposition ("Dhaduk Dep.") pp. 26:14-28:4). One of their joint business ventures involved a 50-50 partnership in two

medical/pharmaceutical companies in the United States: Somahlution ("Soma") and Global Pharma Analytics, LLC ("GPA"). (Dhaduk Dep. pp. 160:23-161:2). Around July 1, 2015, Patel and Dhaduk began discussing how to separate their business interests. (Dhaduk Dep. pp. 146:17-147:3). Subsequently, on July 16, 2015, Dhaduk and Patel signed a written document, titled the "Memorandum of Understanding" ("MOU"). (Dhaduk Dep. p. 213:3-10; Doc. 7-1 ("MOU")). The MOU includes six provisions, detailing how the parties will divide their interests in various investments. (*See* MOU). The MOU ends with a clause that states:

> The above six points will conclude the entire business venture and we would [sic] conclude our business relationship. All account [sic] will be settled and all joint business between Mukesh Patel and Dr. Dhaduk. We will have no other financial or managerial liability except the commitments made in this agreement.

(MOU).

Before signing, Dhaduk reviewed the MOU. (Dhaduk Dep. p. 213:11-18). He understood the agreement to memorialize how the parties would "move forward" in ending their business relationship. (Dhaduk Dep. pp 213:19-214:8). Dhaduk stated that if their was a future misunderstanding about the parties' business dealings, then they would look to the MOU for guidance. (Dhaduk Dep. pp. 213:19-216:17).

The MOU's third provision provides: "Dr. Dhaduk will pay Mukesh bhai USD 9.45 Million as soon as he can for exiting Soma/GPA." (MOU, at ¶ 3). As previously mentioned, Dhaduk and Patel, were 50-50 owners of Soma and GPA. (Dhaduk Dep. pp. 160:23-161:2). According to the MOU, Dhaduk would pay Patel $9.45 million for his entire interest in Soma and GPA. (Dhaduk Dep. pp. 217:11-17; 130:4-10; MOU, at ¶ 3). Dhadhuk has acknowledged that the MOU does not state that the source of Patel's $9.45 million payment for relinquishing his interest in Soma and GPA was contingent on and had to flow from the profits of Soma and GPA. (Dhaduk Dep. pp. 219:22-220:5). On the other hand, Dhaduk has staunchly maintained that Patel's $9.45 million dollar payout would only come from Soma and GPA if and when they

became profitable. (Dhaduk Dep. pp. 218:4-9; 131:12-16).

With the MOU's execution, Patel released his ownership interest in Soma and GPA. (MOU, at ¶ 3; *see also* Doc. 48-3, Transcript of Patel's 7/11/19 deposition ("Patel Dep.") pp. 103:7-104:4 ). Dhaduk has not yet paid Patel for exiting Soma and GPA. (Dhadhuk Dep. pp. 130:17-131:4; Doc 7), but he has personally invested $30 million into Soma since the MOU's execution. (Dhaduk Dep. 227: 14-16).

## II. Procedural History

On December 6, 2017, Patel initiated this action by filing the Complaint against Dhaduk. (Doc. 1). Dhaduk filed a partial motion to Dismiss on December 27, 2017. (Doc. 5). In response, Patel filed an amended complaint on January 10, 2018 (Doc. 7), and Dhaduk filed an answer and affirmative defenses on January 24, 2018 (Doc. 8). Dhaduk filed an amended answer with counterclaims on June 19, 2019 (Doc. 27), which Patel moved to dismiss on July 10, 2019 (Doc. 29). Patel then filed a motion for summary judgment on his breach of contract claim and Dhaduk's counterclaims on August 30, 2019. (Doc. 39). I granted Patel's motion to dismiss Dhaduk's counterclaims, giving Dhaduk leave to amend his tortious interference claim, on September 5, 2019. (Doc. 42). Dhaduk filed an amended tortious interference counterclaim on September 26, 2019 (Doc. 50), and Patel subsequently moved to dismiss it on October 10, 2019 (Doc. 55). I dismissed Dhaduk's tortious interference counterclaim with prejudice on November 6, 2019. (Doc. 64). Now, I am presented with Patel's motion for summmary judgment on his breach of contract claim. (Doc. 39).

## III. Legal Standard

Summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A court may grant a motion for summary

3

judgment if, after it considers all probative materials of record, with inferences drawn in favor of the non-moving party, the court is satisfied that there are no genuine issues of material fact and the movant is entitled to judgment as a matter of law." *Chavarriaga v. N.J. Dep't of Corrs.*, 806 F.3d 210, 218 (3d Cir. 2015) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 330, 106 S. Ct. 2548, 2556, 91 L. Ed. 2d 265 (1986); *Brooks v. Kyler*, 204 F.3d 102, 105 n.5 (3d Cir. 2000)). "A fact is 'material' under Rule 56 if its existence or nonexistence might impact the outcome of the suit under the applicable substantive law. A dispute over a material fact is 'genuine' if 'a reasonable jury could return a verdict for the nonmoving party.'" *Santini v. Fuentes*, 795 F.3d 410, 416 (3d Cir. 2015) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 2510, 91 L. Ed. 2d 202 (1986)). "In determining whether the dispute is genuine, the court's function is not to weigh the evidence or to determine the truth of the matter . . . ." *American Eagle Outfitters v. Lyle & Scott Ltd.*, 584 F.3d 587, 581 (3d Cir. 2009) (citing *Anderson*, 477 U.S. at 248-49, 106 S. Ct. 2505).

The moving party bears the initial burden to identify "specific portions of the record that establish the absence of a genuine issue of material fact." *Santini*, 795 F.3d at 416 (citing *Celotex*, 477 U.S. at 323, 106 S. Ct. 2548, 2553). If this burden is satisfied by the movant, the burden then "shifts to the nonmoving party to go beyond the pleadings and 'come forward with specific facts showing that there is a genuine issue for trial.'" *Id.* (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S. Ct. 1348, 1356, 89 L. Ed. 2d 538 (1986)). The nonmovant's burden is not satisfied by "simply show[ing] that there is some metaphysical doubt as to the material facts." *Chavarriaga*, 806 F.3d at 218.

### IV. Discussion

The instant motion raises two issues: (1) whether the MOU is a legally binding contract, and if so (2) whether Dhaduk breached his obligations under the

4

MOU. Neither party has raised the issue of conflict of laws in its briefing on assumption, so I apply Pennsylvania law. *Montgomery Ward & Co. v. Pac. Indem. Co.*, 557 F.2d 51, 58 n.11 (3d Cir. 1977).

To prove a breach of contract claim under Pennsylvania law, a plaintiff "must establish '(1) the existence of a contract, including its essential terms, (2) a breach of a duty imposed by the contract[,] and (3) resultant damages.'" *Ware v. Rodale Press, Inc.*, 322 F.3d 218, 225 (3d Cir. 2003) (quoting *CoreStates Bank, N.A. v. Cutillo*, 723 A.2d 1053, 1058 (Pa. Super. Ct. 1999)). Summary judgment must be granted, because Patel has established as a matter of law that: (1) the MOU is a legally enforceable contract, (2) Dhaduk breached the MOU when he failed to pay Patel $9.45 million in exchange for leaving Soma and GPA, and (3) Patel has suffered damages because Dhaduk has not yet paid him $9.45 million under paragraph three of the MOU.

### A. The MOU Is a Valid Contract.

The MOU is a valid and enforceable contract. To establish the existence of a contract: (1) both parties must manifest an intention to be bound by the terms of the agreement, (2) the terms of the agreement must be sufficiently definite in order to be enforced, (3) there must be consideration. *Ecore Int'l, Inc. v. Downey*, 343 F. Supp. 3d 459, 487 (E.D. Pa. 2018) (citations omitted).

Patel claims that the MOU was meant to be a legally binding document. (*See* Doc. 40, at 13). Dhaduk, however, argues that the MOU was meant to memorialize "an informal outline [] to address how any profits would be split, should certain entities become profitable" upon separation of the parties' joint investments. (Doc. 48 at 24).

#### 1. The Parties Intended To Be Bound.

The first element of contract formation is met, because both parties manifested an intent to be bound by the MOU with respect to the separation of their

5

business ventures. "In assessing intent, the object of inquiry is not the inner, subjective intent of the parties, but rather the intent a reasonable person would apprehend in considering the parties' behavior." *Am. Eagle Outfitters v. Lyle & Scott Ltd.*, 584 F.3d 575, 582 (3d Cir. 2009).While documents that have the appearance of a contract could simply be negotiations with the aim of executing a contract in the future, it is still possible that "parties may bind themselves contractually although they intend, at some later date, to draft a more formal document." *Id*.

Here, Patel and Dhaduk agreed that the MOU would govern the separation their interests in various joint ventures at the conclusion of their professional relationship. (*See* Dhaduk Dep. pp. 85:5-13; 213:24-215:16). The MOU was intended to be a reference point if there was ever a misunderstanding over how to resolve the separation of their business dealings. (Dhaduk Dep. 214:5-18). After various negotiations between the parties, Patel drafted the document and sent it to Dhaduk, who acknowledges reviewing and signing it. (Dhaduk Dep. 85:15-19; 213:11-18;  MOU).

The MOU also contains language that supports the parties' intention to be bound. The final provision provides: "The above six points will conclude the entire business venture and we would conclude our business relationship. All account [sic] will be settled and all joint business between Mukesh Patel and Dr. Dhaduk. We will have no other financial or managerial liability except the commitment in this agreement." (MOU). Contrary to Dhaduk's position, the fact that the MOU does not contemplate "failures," set forth "governing law," or reflect the sentiments of prior verbal negotiations does not mean that the parties did not intend to be bound by its provisions. (*See* Doc. 48, at 25). Thus, Patel and Dhaduk intended to be bound by the MOU.

### 2. The Terms of the MOU are Sufficiently Definite.

The second element of contract formation is met, because the plain language

of the MOU's third paragraph, the term at issue, is sufficiently definite such that Dhaduk's obligations under it are enforceable. "Whether the terms are sufficiently definite is a question of law*." Am. Eagle Outfitters v. Lyle & Scott Ltd.*, 584 F.3d 575, 585 (3d Cir. 2009). "To be enforceable, an agreement must be certain about the nature and extent of its obligations." *Shell's Disposal & Recycling, Inc. v. City of Lancaster*, 504 F. App'x 194, 202 (3d Cir. 2012) (internal quotations omitted)."[A] contract fails for indefiniteness when it is impossible to understand what the parties agreed to because the essential terms are ambiguous or poorly defined." *Id.* (internal quotations omitted).

Here, only the third paragraph of the MOU is in dispute. It provides: "[] Dhaduk will pay [Patel] USD 9.45 Million as soon as he can for exiting Soma/GPA." (MOU). The parties understood what the phrase "for exiting Soma/GPA" meant. When Patel and Dhaduk were negotiating how to conclude their professional relationship in July 2015, Patel originally did not want to exit Soma or GPA, but requested to have his shares diluted. (Dhaduk Dep. pp. 160:15-22; 165:6-12). Instead, the parties ultimately agreed that, Dhaduk would pay Patel "for exiting Soma/GPA." (MOU, at ¶ 3). Dhaduk admits that under the terms of the MOU he would receive Soma and GPA profit or loss. (Dhaduk Dep. p. 217:11-17).

With regard to the timing of such payment, the provision at issue states, "as soon as he can." (MOU, at ¶ 3). Dhaduk argues that this phrase is "undoubtedly indefinite" because "his understanding was that the payment would come from profits, if any, from joint business ventures." (Doc. 48, at 25). He further alleges that paragraph three is ambiguous because it does not "set a time for when the payment had to be made, nor did they set forth a measure by which [] Dhaduk's 'ability' to pay would be assessed." (*Id.*). Patel argues that the phrase "as soon as he can" plainly refers to when he would receive the $9.45 million payment from Dhaduk not the source of the payment. (Doc. 40, at 25).

7

I agree with Patel. Dhaduk appears to be arguing that the phrase "as soon as he can" is not definite, because it (1) lacks a set time for payment or a method for discerning when Dhaduk has the ability to pay, and (2) does not include the specific source of payment, namely the profits of Soma and GPA. First, the phrase "as soon as he can" provides sufficiently definite parameters for ascertaining when a party has the duty to pay, as courts have repeatedly enforced this type of provision. Under the majority viewpoint, a number of jurisdictions have interpreted a promise to pay when able as contingent on whether the promisor actually has the ability to pay. *See* 14 Williston on Contracts § 42:9 (4th ed.). The minority viewpoint construes a promise to pay when able as an agreement to pay within a reasonable amount of time. *Wilker v. Jenkins*, 88 Pa. Super. 177, 181 (1926); *see also* 14 Williston on Contracts § 42:9 (4th ed.). Second, Dhadhuk's claim that the phrase "as soon as he can" is ambiguous, because it does not specify that payment "would come from profits, if any, from joint business ventures," fails. At bottom, Dhaduk is trying to argue that the phrase "as soon as he can" is indefinite, because it does not disclaim him of a personal responsibility to pay Patel for exiting Soma and GPA, regardless of these companies' success. While the parties may have the discussed the possibility of this arrangement, which Dhaduk has repeatedly advocated, it is not the position that is clearly memorialized in the MOU. (*See* MOU). Dhaduk has even acknowledged that the MOU does not specify that the phrase "as soon as he can" means he is only obligated to pay Patel if Soma and GPA are profitable. (Dhaduk Dep. p. 217:11-17). Though Dhaduk makes much of the fact that Patel stated payment for exiting Soma and GPA would come from "the companies [Dhaduk] owns and from there he would try to pay the money" (Patel Dep. p. 109:21-22), this assertion does not necessarily mean that Dhaduk only had to pay Patel if those joint business ventures were successful. As such, paragraph three of the MOU is sufficiently definite to be enforceable.

### 3. The MOU Is Supported by Mutual Consideration

The third element of contract formation is met, because there was mutual consideration by way of the MOU's terms. "Indeed, the definition of consideration is, essentially, that which is bargained for." *Liptok v. Bank of Am.*, No. 3:15-CV-156, 2016 WL 6818362, at *12 (M.D. Pa. Oct. 20, 2016), report and recommendation adopted, No. 3:15CV156, 2016 WL 6780757 (M.D. Pa. Nov. 16, 2016), aff'd, 773 F. App'x 97 (3d Cir. 2019). "'To constitute consideration, a performance or return promise must be bargained for. . . . A performance or return promise is bargained for if it is sought by the promisor in exchange for his promise. . . .'" *Hoffman v. Bankers Tr. Co.*, 925 F. Supp. 315, 319 (M.D. Pa. 1995) (quoting Restatement (Second) of Contracts § 71(1) and (2) (1981)). Here, paragraph three of the MOU states: "[] Dhaduk will pay [Patel] USD 9.45 Million as soon as he can for exiting Soma/GPA." (MOU). This provision is supported by mutual consideration, because Dhaduk agreed to pay Patel "as soon as he can" in exchange for Patel relinquishing to Dhaduk his interest in Soma and GPA. Though Dhaduk tries to cast doubt on whether Patel actually had an ownership interest in Soma and GPA, Dhaduk clearly admits that he and Patel had a 50-50 partnership in these two companies in July 2015. (Dhaduk Dep. pp. 160:23-161:2). Accordingly, the MOU is supported by mutual consideration, and Patel has conclusively established that the MOU satisfies all three of the required elements for contract formation.

### **B. Dhaduk Breached the MOU.**

Dhaduk breached the MOU, because he had the ability to pay Patel after the MOU was executed and failed to do so. In interpreting payment obligations that are conditioned on the ability of the promisor to make payment, courts have taken a variety of approaches. The majority viewpoint construes the promise to pay when able "as a valid condition precedent to accrual of the cause of action." *See* 14 Williston on Contracts § 42:9 (4th ed.). Under this interpretation, the promisee

must establish that the promisor actually has the ability to make payment in order to establish a breach of contract. *Id.; see, e.g., Kreiter v. Miller,* 1881 WL 13917, at *1 (Pa. 1881) (holding that the payment is to be made when the promisor is able where the note stated "to be paid at my convenience whenever I have funds in hands to pay the same."). While a minority of courts have held that a promise to pay when the promisor is able must be construed "to allow the payor a reasonable time within which to make payment or acquire the means to do so, but that time shall not be extended to defeat the purpose of the contract and enable the debtor to wholly avoid his obligation." *Wilker*, 88 Pa. Super. at 181 (holding that six years was a reasonable time for payment on a debt obligation that provided for payment "as fast as I can"); *see also* 14 Williston on Contracts § 42:9 (4th ed.) (noting that some jurisdictions have implied an obligation to "use reasonable means to become able to pay" when a contract includes a promise to pay when able). Additionally, in *Novello v. Med. Elecs. & Research Corp.,* the court declined to apply either approach and "look[ed] to the intention of the parties as determined from their entire course of conduct." 60 Pa. D. & C.2d. 355, 357 (Pa. Com. Pl. 1971).

      Patel argues that I should follow the minority viewpoint and deem that Dhaduk has breached his obligation to pay Patel $9.45 million, because a reasonable amount of time, *i.e.* over four years, has elapsed since the execution of the MOU. (Doc. 40 at 28). Alternatively, Patel contends that he has demonstrated Dhaduk breached the MOU under the majority viewpoint as well, because Dhaduk had the ability to pay him $9.45 million subsequent to the MOU's execution, seeing that he admitted to personally investing $30 million into Soma after he signed the MOU. (Doc. 40 at 28-29). In response, Dhaduk reiterates the same point that he has repeatedly made: the phrase "as soon as he can" should be interpreted to mean that he only had an obligation to pay Patel if Soma and GPA became profitable, as discussed in their negotiations prior to the execution of the MOU. (Doc. 48, at 39). Under this construction of the phrase "as soon as he can," Dhaduk

10

alleges that he has not breached the MOU because Soma and GPA have not been successful. (Doc. 48, at 38).

To determine if I can consider the prior negotiations that Dhaduk asserts occurred, I must determine whether the parole evidence rule applies. When a written agreement represents the parties' entire contract, the parol evidence rule dictates that the writing is considered to be the best and only evidence of the parties' agreement. *Yocca v. Pittsburgh Steelers Sports, Inc.*, 854 A.2d 425, 436 (2004). A writing is presumed to be the parties entire contract when it appears to be "a contract complete within itself" and conveys "a complete legal obligation without any uncertainty as to the object or extent of the parties' engagement." *Id.* at 435 (internal quotations omitted). The presence of an integration clause that states the writing is meant to express the parties' entire agreement is a clear indication that the writing contemplates all of the parties' negotiations and conversations made before its execution. *Id.* Prior representations regarding the same subject matter as the contract are rarely admissible to vary or explain the terms of the agreement. *Rahemtulla v. Hassam*, 539 F. Supp. 2d 755, 773 (M.D. Pa. 2008) (citing *Hart v. Arnold*, 884 A.2d 316, 341 (2005)). In determining whether the same subject matter requirement is met, the written contract does not need to directly contradict the prior representations as long as the contract relates to the same subject addressed by the alleged prior representations. *Palermo Gelato, LLC v. Pino Gelato, Inc.*, No. 2:12-CV-00931, 2013 WL 3147312, at *5 (W.D. Pa. June 19, 2013). While a court may consider extrinsic evidence to resolve contractual ambiguities, an opposing party may not offer extrinsic evidence to create an ambiguity that does not exist within the language of the contract. *See Int'l Union, United Auto., Aerospace & Agr. Implement Workers of Am., U.A.W. v. Skinner Engine Co.*, 188 F.3d 130, 145 (3d Cir. 1999).

Since the MOU is a fully integrated contract with respect to the resolution of Patel and Dhaduk's business dealings, I cannot consider extrinsic evidence to vary

11

the meaning of the term "as soon as he can" in accordance with Dhaduk's assertion. The MOU includes a final provision that provides: "The above six points will conclude the entire business venture and we would conclude our business relationship. All account [sic] will be settled and all joint business between Mukesh Patel and Dr. Dhaduk. We will have no other financial or managerial liability except the commitment in this agreement." (MOU). This provision indicates that the MOU is fully integrated as to the separation of Dhaduk and Patel's joint business ventures. Along that vein, I cannot consider Dhaduk's alternative construction of the phrase "as soon as he can," because the meaning of this language is unambiguous. Moreover, the language of the MOU does not remotely reflect the construction that Dhaduk repeatedly puts forth that the phrase "as soon as he can" means that Dhaduk only has an obligation to pay Patel if and when Soma and GPA become profitable.

In interpreting the phrase "as soon as he can," I will apply the majority rule. Here, Dhaduk has breached paragraph three of the MOU, because Dhaduk had the ability to pay Patel $9.45 million some time after the MOU's execution. Dhaduk admitted his ability to pay Patel under the MOU when he explained that he has invested at least $30 million into Soma since the MOU's signing on July 16, 2015. (Dhaduk Dep. 181:7-9; 227:14-16). Dhaduk's argument that he procured that funding from "bank loans" and "that he is unaware of his net worth because he has so many loans pending" is unavailing. (Doc. 48, at 38). Accordingly, Patel has proven that Dhaduk breached the MOU.

**C. Patel Has Suffered Damages Due To Dhaduk's Breach of the MOU.**

Patel has suffered damages as a result of Dhaduk breaching the MOU's third paragraph. "To prove damages, a plaintiff must give a factfinder evidence from which damages may be calculated to a 'reasonable certainty.'" *Ware v. Rodale*

*Press, Inc.*, 322 F.3d 218, 225–26 (3d Cir. 2003). Dhaduk has failed to provide Patel with the $9.45 million dollar payment that he is owed under the MOU. (Dhaduk Dep. p131:2-4). Since paragraph three states the exact dollar amount that Dhaduk owes Patel, the damages sought by Patel are "reasonably certain." (MOU, at ¶ 3). Thus, Patel has established that he has suffered damages as a result of Dhaduk's breach, and as such has demonstrated as a matter of law that Dhaduk breached the MOU.

## V. Conclusion

For the above stated reasons, Patel's motion for summary judgment will be granted.

An appropriate order follows.

December 2, 2019  /s/ A. Richard Caputo
Date  A. Richard Caputo
United States District Judge